# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| PATRICIA A. HIBBITT, | : | Case No. 3:19-cv-144 |
|---|---|---|
| Plaintiff, | : | |
| vs. | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Sharon L. Ovington |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

## I.    Introduction

Plaintiff Patricia A. Hibbitt brings this case challenging the Social Security Administration's denial of her applications for period of disability, Disability Insurance Benefits, and Supplemental Security Income. She applied for benefits on August 7, 2015, asserting that she could no longer work a substantial paid job. Administrative Law Judge (ALJ) Deborah H. Sanders concluded that she was not eligible for benefits because she is not under a "disability" as defined in the Social Security Act.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #10), Plaintiff's Reply (Doc. #11), and the administrative record (Doc. #6).

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Sanders's non-disability decision.

## II. Background

Plaintiff asserts that she has been under a "disability" since July 31, 2015. She was forty-one years old at that time and was therefore considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c). She has a high school education. *See id.* §§ 404.1564(b)(4), 416.964(b)(4).[2]

The evidence of record is sufficiently summarized in the ALJ's decision (Doc. #6, *PageID* #s 62-74); Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #10); and Plaintiff's Reply (Doc. #11). Rather than repeat these summaries, the pertinent evidence will be discussed when addressing the parties' arguments.

## III. Standard of Review

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from

---

[2] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

2

performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or

deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

IV. **The ALJ's Decision**

As noted previously, it fell to ALJ Sanders to evaluate the evidence connected to Plaintiff's application for benefits. She did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. §§ 404.1520, 416.920. She reached the following main conclusions:

- Step 1: Plaintiff has not engaged in substantial gainful employment since July 31, 2015.

- Step 2: She has the severe impairments of osteoarthritis, bilateral knee degenerative joint disease, right shoulder tendinopathy/mild osteoarthritis, chronic lower back pain/lumbago, chronic pain syndrome, hyperlipidemia, obesity, anxiety disorder, and depressive disorder.

- Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

- Step 4: She has the residual functional capacity "to lift and/or carry five pounds frequently and ten pounds occasionally. In an eight-hour day, the claimant can stand and/or walk up to two hours with an option to sit after every fifteen minutes of standing and/or walking while remaining on task. She can sit for up to six hours in an eight-hour day and never engage in foot controls. The claimant can occasionally climb ramps and stairs but never ladders, ropes or scaffolds. She can occasionally reach overhead with the right upper extremity; and never kneel, crouch, or crawl. She can never work at unprotected heights and she can tolerate occasional exposure to extreme heat/cold, wetness, and irritants such as fumes, odors, dusts, gases, and poorly ventilated areas. Additionally, the claimant is limited to simple, repetitive tasks."

4

Step 4: She is unable to perform any of her past relevant work.

Step 5: She could perform a significant number of jobs that exist in the national economy.

(Doc. #6, *PageID* #s 62-74). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 74.

V. <u>**Discussion**</u>

Plaintiff contends that the ALJ reversibly erred in evaluating the medical evidence, objective medical data, and her residual functional capacity. The Commissioner maintains that substantial evidence supports the ALJ's decision.

Plaintiff asserts that ALJ Sanders erred in providing a less restrictive residual functional capacity than the previous ALJ on the basis that her impairments either stabilized or improved. According to Plaintiff, the ALJ's conclusion is contradicted by substantial medical data. Specifically, "the ALJ found that the objective tests fail to support the alleged severity and limiting effects of [Plaintiff's] impairments." (Doc. #7, *PageID* #1235). For instance, "the ALJ interpreted [Plaintiff's] lumbar spine and hip diagnostic testing as showing mild or minimal impairment." *Id.* But, Plaintiff correctly points out, the MRI of her lumbar spine shows more severe damage: "a disc bulge at L4-L5 that was creating moderate narrowing of the exiting nerve root." *Id.* (citing Doc. #6, *PageID* #s 699, 706, 924-25). The ALJ overlooked or ignored that portion of the MRI. Further, the ALJ did not discuss additional evidence that supports Plaintiff's allegations. For instance, in November 2016, when Plaintiff reported lower back pain to Melinda Scott, D.O., Dr. Scott noted that Plaintiff had moderate pain to palpation over the

5

paraspinals of the lumbar spine on the right, decreased range of motion with lumbar extension with pain, and negative straight leg raise. (Doc. #6, *PageID* #701).

Plaintiff asserts that the ALJ similarly erred in concluding that her knee osteoarthritis symptoms have been stable since the previous ALJ's decision. (Doc. #7, *PageID* #s 1236-37). She contends the ALJ failed to consider evidence from July 2016 through December 2017. Plaintiff specifically points to MRIs from September 2016 that showed moderate osteoarthritis and lateral meniscus tears in both knees. *Id.* at 1237 (citing Doc. #6, *PageID* #s 688, 692).

Plaintiff is correct. The ALJ found that in July 2015, x-rays of Plaintiff's right knee showed a small amount of joint fluid in the suprapatellar bursa but was otherwise normal. (Doc. #6, *PageID* #70). She further recognized that MRIs of Plaintiff's left knee from July 2013 and July 2016 showed a small radial tear, tricompartmental osteoarthritis, and joint effusions. Based on this, the ALJ concluded that Plaintiff's symptoms have been stable since the prior ALJ's decision.

In reaching her conclusion, the ALJ failed to consider significant objective evidence. For instance, in September 2016, Melinda Scott, D.O., Plaintiff's treating physician, noted that she had an antalgic gait, tenderness in both knees, and positive McMurray and Patellar Grind Tests. *Id.* at 692. Dr. Scott ordered MRIs of both knees. The MRI of Plaintiff's left knee revealed similar findings to those identified by the ALJ: a small radial tear at the body segment of the lateral meniscus, small joint effusion, and tricompartment osteoarthritis that was most severe at the medial compartment where full-thickness articular loss was present. *Id.* at 703-04. The MRI of Plaintiff's right knee

showed a possible radial tear at the body segment of the lateral meniscus and moderate sized joint effusion. *Id.* at 707-08. It also revealed tricompartment osteoarthritis that was most severe at the medial compartment where full thickness articular cartilage loss was seen at the femoral condyle.

Dr. Scott, upon review of the MRIs, concluded that Plaintiff had the signs and symptoms of exacerbation of her osteoarthritis in both knees with lateral meniscus tearing. Because of Plaintiff's mechanical symptoms and lack of response to cortisone injections, home exercise program, and NSAID use, she decided to pursue knee arthroscopy for both knees. *Id.* at 692. Dr. Scott noted that Plaintiff understood that surgery was not a definitive treatment for her arthritis and that she may require additional treatment after surgery. *Id.*

In October 2016, Plaintiff underwent arthroscopic surgery to repair degenerative tears of the lateral meniscus of her left and right knees. *Id.* at 709. Her surgeon, Dr. Cook, indicated that she was treated conservatively without relief before surgery. *Id.* Further, he noted that he discussed the risks of surgery, including "continued pain and stiffness and failure to get complete pain relief due to her arthritis and morbid obesity." *Id.* at 710. After surgery, Dr. Cook indicated that her postoperative diagnoses for her left knee included grade 2 chondromalacia of her lateral tibial plateau and grade 2 to 3 chondromalacia of the patellofemoral joint, medial femoral condyle, and medial tibial plateau. *Id.* at 709. Her postoperative diagnoses for her right knee included grade 2 to 3 chondromalacia of the patella, femoral trochlea, medial and lateral femoral condyle and

"[f]ocal area of grade 2 to 3 chondromalacia of the lateral tibial plateau as well as the torn medial meniscus." *Id.*

In February 2017, treatment notes indicated that after surgery and six weeks of physical therapy, Plaintiff was experiencing constant knee pain—rated ten on a scale from one to ten. *Id.* at 947. Upon examination, she had moderate tenderness in both her knees. *Id.* at 948. In April 2017, Plaintiff complained of pain in both knees. *Id.* at 1154. She reported that the cortisone shots she had in February only gave her limited relief and physical therapy did not help. *Id.* Dr. Scott noted that she had an antalgic gait and tenderness in both knees. *Id.* at 1156. Further, Plaintiff experienced inadequate responses to acetaminophen and oral NSAIDS and failed three months of conservative therapy. Dr. Scott opined that Plaintiff's pain was interfering with her functional activities, including ambulation and prolonged standing. *Id.*

In August 2017, Plaintiff reported increased pain and swelling in her left knee. *Id.* at 1171. She had popping, locking, and instability. *Id.* Upon examination, Julie Weller, ACNP, noted that she had swelling and crepitus. *Id.* at 1173. Ms. Weller indicated that the MRI showed post-surgery changes laterally and a small medial meniscus tear. *Id.* at 1170. Further, they planned to proceed with an arthroscopy of her left knee with partial medial meniscectomy. *Id.* In September 2017, Plaintiff underwent a second knee surgery. *Id.* at 1167. In October 2017, Plaintiff had increased swelling in her left leg and knee pain. *Id.* at 1162.

These objective findings are significantly more severe than those recognized by the ALJ and show that Plaintiff's knee condition did not remain stable since the prior

ALJ's decision. The ALJ improperly overlooked or ignored evidence contrary to her conclusions. *See Gentry*, 741 F.3d at 724 (The ALJ failed "to address certain portions of the record, including the evidence of a continuing illness that was not resolved despite use of increasingly serious and dangerous medications.") (citing *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 435 (6th Cir. 2013) (reversing where the ALJ "cherry-picked select portions of the record" rather than doing a proper analysis); *Germany–Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (finding error where the ALJ was "selective in parsing the various medical reports")).

The ALJ likewise overlooked notes from Plaintiff's physical therapist that suggest her impairments pointedly impacted her functional abilities. For instance, in December 2016, the physical therapist noted that because of Plaintiff's constant back, knee, hip, and shoulder pain, she had limitations in activities such as washing dishes and cleaning the bathroom. (Doc. #6, *PageID* #651). Plaintiff also had decreased range of motion. Notably no doctor reviewed any of the evidence that the ALJ overlooked. Record reviewing physician Michael Lehv, M.D., reviewed Plaintiff's records in November 2015, and Lynne Torello, M.D., reviewed her records in February 2016. *Id.* at 203-12, 214-23.

"[A] substantiality of evidence evaluation does not permit a selective reading of the record. 'Substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'" *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x

9

636, 641 (6th Cir. 2013) (quoting, in part, *Garner v. Heckler,* 745 F.2d 383, 388 (6th Cir. 1984) (internal citations and quotation marks omitted). ALJ Sanders failed to take into account any evidence that did not support her conclusions. Therefore, substantial evidence does not support the ALJ's residual functional capacity assessment. *See Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 192 (6th Cir. 2009).

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.[3]

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award

---

[3] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other challenges to the ALJ's decision is unwarranted.

of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her applications for Disability Insurance Benefits and Supplemental Security Income should be granted.

**IT IS THEREFORE RECOMMENDED THAT**:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Patricia A. Hibbett was under a "disability" within the meaning of the Social Security Act;

3. This matter be **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and Recommendations, and any decision adopting this Report and Recommendations; and

4. The case be terminated on the Court's docket.

April 14, 2020  *s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).